# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS LINDSAY,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. SACV 17-01545-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## BACKGROUND

In November 2017, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning February 2, 2013 (Administrative Record ("AR") 114-115, 272-274.) His applications were denied initially and upon reconsideration. (AR 146-151, 154-160.) Hearings were held before an Administrative Law Judge ("ALJ") on March 4, 2015,

July 29, 2015, and February 23, 2016, at which Plaintiff (who was represented by an attorney), a medical expert ("ME"), and a vocational expert ("VE") testified. (AR 41-54, 55-64, 65-91.)

On April 18, 2016, the ALJ issued a decision finding that Plaintiff suffered from a medically severe impairment – namely, lumbar degenerative disc disease. (AR 16.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work and concluded that Plaintiff was able to perform his past relevant work as a court reporter. (AR 22, 30.) Accordingly, the ALJ found Plaintiff was not disabled at any time from February 2, 2013 through the date of the ALJ's decision. (AR 30.) On July 20, 2017, the Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-5.)

**DISPUTED ISSUES**

1. Whether the ALJ's finding that Plaintiff did not suffer from a severe mental impairment is supported by substantial evidence.
2. Whether the ALJ erred by failing to include limitations related to Plaintiff's mild mental impairment in his hypothetical to the VE.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court reviews the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir.

2014). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Garrison,* 759 F.3d at 1010; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Finally, even when an ALJ's decision contains error, it must be affirmed if the error was harmless. *Treichler*, 775 F.3d at 1099.

## DISCUSSION

**1. The ALJ's finding that Plaintiff's mental impairments were non-severe.**

At step two of the sequential evaluation process, the claimant has the burden to show that he has one or more "severe" medically determinable impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 148 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 416.921(a). In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).

Here, the ALJ found that Plaintiff's medically determinable impairments of depression, anxiety, and history of alcohol abuse, in remission caused mild limitations in activities of daily living; mild limitations in social functioning; and mild limitations in concentration, persistence, and pace. The ALJ found no episodes of decompensation. (AR 16-17). Because he found that Plaintiff's mental impairments did not cause more than minimal limitation in his ability to perform basic mental work activities, the ALJ concluded that they were not severe. (AR 16-

18.) In reaching his non-severity conclusion, the ALJ relied upon the following evidence.

The ALJ considered the opinion of psychiatric consultative examiner Sohini P. Parikh, M.D. (AR 17.) Dr. Parikh conducted a psychiatric evaluation of Plaintiff on February 17, 2014. She noted that Plaintiff's mood was depressed and anxious, and that his hands appeared shaky, likely due to his alcohol related problem, but otherwise, her findings were not significant. For example, Dr. Parikh reported that Plaintiff was able to focus during the evaluation, was alert, cooperative, his thought process was logical, his memory and intellectual function were intact, and he denied suicidal ideation. (AR 472-477.) Dr. Parikh diagnosed Plaintiff with mood disorder, not otherwise specified, and alcohol dependency. She advised that from a psychiatric standpoint, Plaintiff should refrain from alcohol. Based upon her evaluation, Dr. Parikh opined that Plaintiff's concentration, persistence and pace were not impaired; his ability to understand, carry out, and remember simple instructions was not impaired; and in other areas – *i.e.*, maintaining social functioning, ability to deal with changes in a routine work setting, and ability to respond to coworkers, supervisors and the general public – Plaintiff had mild mental impairment. (AR 477-478.) Dr. Parikh's opinion constituted substantial evidence in support of the ALJ's conclusion that Plaintiff's mental impairments were no more than mild. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion, alone, constitutes substantial evidence to support ALJ finding).

The ALJ also relied upon the opinions of the two State agency psychological consultants. (AR 17.) After reviewing the record, the consultants, R. E. Brooks, M.D. and P. M. Balson, M.D., both opined that Plaintiff had no severe mental impairment. In his opinion, rendered on March 6, 2014, Dr. Brooks found that Plaintiff had no mental functional limitations, and therefore no severe impairment. (AR 97, 108.) Dr. Balson reviewed the record in May 2014, and agreed with Dr. Brooks's assessment. (AR 121-123.) The opinions of non-examining physicians may also

serve as substantial evidence so long as they are consistent with independent clinical findings or other evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002.)

The ALJ specifically found that these opinions were supported by the medical record, which he noted showed normal mental status examination findings, as well as conservative, routine treatment with medication. (AR 17.) As Plaintiff concedes, his mental status examination findings were essentially normal throughout the record. (*See* AR 409, 475-477, 518-519, 567, 594, 599, 602-603, 606, 823, 828.)

In addition, the ALJ found that Plaintiff's activities of daily living were inconsistent with his allegedly severe mental impairment. In particular, the ALJ pointed out that Plaintiff lived alone, took care of his personal grooming, drove, got along with family members, had close friends, had no problems getting along with neighbors, had no difficulty completing household tasks, prepared meals daily, went out almost every day, shopped for groceries, was able to handle his finances, spent time with others, talked on the phone daily, did not need reminders, got along with authority figures, and could follow spoken instructions. The ALJ also noted Plaintiff's testimony that he had moved into a sober living home with six other men, where he had his own room, he attended AA meetings twice a week, and he was the secretary at one of those meetings. (AR 17-18 [citing AR 47, 77-79, 315-325, 474-475.) Each of the foregoing activities or abilities is supported by the record and was properly considered by the ALJ in concluding that Plaintiff's mental impairment did not impose more than minimal limitations on his daily activities or social functioning. *See Haverstock v. Colvin*, 2014 WL 7149417, at *3 (C.D. Cal. Dec. 12, 2014) (with regard to mental impairments, specific criteria which must be met in determining the existence of a severe mental impairment, requiring the ALJ to evaluate evidence of activities of daily living; social function; and concentration, persistence, or pace).

Last, the ALJ discussed Plaintiff's demeanor at the hearing, finding that it undermined his allegations because Plaintiff was "lucid and responsive to

questioning"; his answers "demonstrated good memory recall and logical thinking"; and his testimony reflected good social interaction and good concentration. (AR 18.)

Plaintiff contends that the opinions of Drs. Parikh, Brooks, and Balson could not constitute substantial evidence because Drs. Parikh and Brooks rendered their opinions prior to Plaintiff's hospitalization on March 31, 2014 and Dr. Balson failed to review those hospitalization records. According to Plaintiff, these medical opinions cannot constitute substantial evidence because "the subsequent hospitalization and treatment records reveal the presence of a more limiting mental impairment." (ECF No. 18 at 6.)

The ALJ, however, thoroughly considered all of the medical evidence related to Plaintiff's mental impairment, including Plaintiff's March 2014 hospitalization, in concluding that Plaintiff's mental impairments did not impose any limitations upon his RFC. Specifically, the ALJ noted that on March 31, 2014, Plaintiff presented to the emergency room intoxicated and stated that he had suicidal ideation. After undergoing numerous physical and mental examinations, which revealed generally normal findings, Plaintiff was released on April 4, 2014. (AR 27, 496-498, 502). The hospital records on which Plaintiff relies reflect that on arrival, Plaintiff was diagnosed with suicidal ideation, alcohol intoxication, and dehydration. (AR 500-501.) Upon release, Plaintiff was diagnosed with "major depressive disorder, single episode, unspecified." (AR 498.) Other than his conclusory assertion, Plaintiff does not provide any reason why his hospitalization nullifies the evidentiary value of all prior medical opinions, particularly in light of the fact that the hospitalization records do not contain medical opinions that contradicted those of Drs. Parikh, Brooks, or Balson.

Next, Plaintiff takes issue with the ALJ's reliance upon his normal mental status examinations. While conceding that the ALJ correctly interpreted the medical record in this regard, Plaintiff argues that the examinations were only "a part of his mental health picture." (ECF No. 18 at 6.) According to Plaintiff, his treatment

records demonstrate that he "did not respond to certain medication" and had "increasing bouts of depression, irritability and insomnia." (ECF No. 18 at 6.)

The treatment records to which Plaintiff cites indicate that he received mental health treatment for depression, and that on some occasions reported that specific medication did not help and complained of irritability and insomnia. (AR 703-707.) The existence of an impairment, diagnosis, or symptom, however, does not mean that Plaintiff suffered from a significant limitation in his ability to perform work activities. To the contrary, standing alone, neither a diagnosis nor a claimant's subjective complaints are sufficient to demonstrate severity at step two. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164-1165 (9th Cir. 2008) (ALJ did not err at step two by failing to classify carpal tunnel syndrome as a severe impairment where the medical record did not establish work-related limitations); *Draiman v. Berryhill*, 2018 WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (claimant's "diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has a severe mental impairment" at step two); *Gahagan v. Colvin,* 2013 WL 4547868, at *6 (E.D. Wash. Aug. 28, 2013) ("that certain diagnoses exist in the record does not establish that they are severe or cause disabling symptoms) (citing *Key v. Heckler*, 754 F.2d 1545, 1549-1550 (9th Cir. 1985) (diagnosis alone does not establish severity).

Plaintiff also objects to the ALJ's reliance upon his daily activities in reaching his non-severity finding. Plaintiff argues that, "many home activities are not easily transferable to what may be the more grueling environment of the workplace." (ECF No. 18 at 7.) As discussed above, however, an ALJ is required to consider a claimant's daily activities in analyzing the severity of a mental impairment at step two. See *Haverstock*, 2014 WL 7149417, at *3; 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d). Further, it was reasonable for the ALJ to infer from Plaintiff's daily activities that his mental impairments did not impose significant limitations on his social function or concentration.

1  Next, Plaintiff argues that the ALJ's reliance upon his own observations at the hearing amounted to "sit and squirm" jurisprudence. (ECF No. 18 at 7 [citing *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985)].) Although courts generally condemn an ALJ's reliance upon personal observations, this is not a case where the ALJ substituted his own lay judgment in the place of a medical diagnosis. Instead, the ALJ relied, in part, upon observations that Plaintiff's conduct at the hearing was inconsistent with alleged impaired concentration or social function. This was not an improper consideration. *See Orn v. Astrue*, 495 F.3d 625, 639-640 (9th Cir. 2007) (while an ALJ may not rely solely on personal observations to discount a claimant's testimony, the ALJ may use those observations in context with other indicators of the claimant's credibility in evaluating testimony); *Estrada v. Colvin*, 2016 WL 1181505, at *10 (E.D. Cal. Mar. 28, 2016) (ALJ was entitled to consider observations that claimant was able to participate in the hearing without distraction, which contradicted hearing testimony regarding maintaining concentration); *Obiora v. Astrue*, 2012 WL 628144, at *4 (C.D. Cal. Feb. 27, 2012) (ALJ properly considered that the claimant, inconsistent with his allegations of difficulty concentrating and following instructions, "behaved appropriately" at the hearing and was able to make arguments on his own behalf).

Finally, Plaintiff points out that in reaching his non-severity determination, the ALJ mentioned Plaintiff's "conservative, routine treatment with medications." (AR 17.) Plaintiff contends that the ALJ erred in so characterizing Plaintiff's mental health treatment because the ALJ failed to identify other available recommended treatment. Plaintiff's claim may be well-taken. *See, e.g., North v. Colvin*, 2014 WL 4666575, at *7 (C.D. Cal. Sept. 18, 2014) (ALJ erred by relying on "conservative" treatment to reject physician's opinion where the ALJ failed to articulate what, if any, other treatment was currently recommended or available for plaintiff's impairments). Nevertheless, in light of the other substantial evidence supporting the ALJ's finding,

the ALJ's improper characterization of Plaintiff's treatment as conservative has no effect on the Court's ultimate conclusion.

In sum, the ALJ's determination that Plaintiff's mental impairments did not impose more than minimal limitation on Plaintiff's ability to perform work related activity is supported by substantial evidence. *See Davenport v. Colvin*, 608 F. App'x 480, 481 (9th Cir. 2015) (in reviewing step two determination, the Court considers whether "the ALJ had substantial evidence to find that the medical evidence clearly established that" Plaintiff did not have a severe mental impairment); *Lomas v. Colvin*, 2014 WL 6775762, at *4–5 (C.D. Cal. Dec. 2, 2014) (substantial evidence supported ALJ's finding of non-severe mental impairments was supported by substantial evidence, including claimant's lack of credibility, a credibility determination that the claimant did not challenge); *Sevier v. Colvin*, 2014 WL 1247369, at *6 (E.D. Cal. Mar. 25, 2014) (ALJ's finding of non-severity supported by substantial evidence where record did not "reflect any functional limitations associated with Plaintiff's diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia").

Even if the ALJ erred by finding Plaintiff's mental impairments non-severe, the error was harmless because the ALJ nevertheless considered those impairments when determining Plaintiff's RFC at step four. (AR 22-23.) *See Davenport,* 608 F. App'x at 481 ("any error regarding the step-two determination is harmless because the ALJ proceeded to step five and considered Davenport's mental impairments as part of that analysis"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is harmless if the ALJ fully evaluated the claimant's medical condition in later steps of sequential evaluation process); *Kemp v. Berryhill*, 2017 WL 3981195, at *5 (C.D. Cal. Sept. 8, 2017) (any error at step two was harmless because the ALJ subsequently considered mental health issues in assessing the claimant's RFC, although the ALJ found mental health issues did not cause any limitation).

## 2. The ALJ's failure to include any mental health limitations in Plaintiff's RFC and hypothetical to the VE.

Plaintiff contends that the ALJ also erred by failing to include mild mental limitations in the RFC assessment and subsequent hypothetical to the VE. (ECF No. 18 at 7-9.) Plaintiff's argument is based upon a mistaken assumption that the ALJ's step two finding that Plaintiff's mental impairments were mild – and, therefore non-severe – equated to a finding that those mental impairments actually imposed limitations on Plaintiff's ability to perform work-related activity. In so arguing, Plaintiff conflates the step two analysis with the separate and distinct RFC assessment at steps four and five. *See Sanchez v. Colvin*, 2016 WL 7017221, at *6 (C.D. Cal. Dec. 1, 2016).

In support of his claim, Plaintiff relies upon *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012). In *Hutton*, the ALJ determined at step two that the claimant's PTSD caused mild limitations in concentration, persistence or pace, but was non-severe. *Hutton*, 491 F. App'x at 850. The ALJ later excluded consideration of the claimant's PTSD in reaching an RFC because he determined that the claimant lacked credibility. In finding error, the Ninth Circuit explained,

> Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'"). The ALJ, however, failed to do so.

*Hutton*, 491 F. App'x at 850.

The regulations require the ALJ to consider the limiting effect of all impairments, including those that are non-severe. The regulations, however, do not require the ALJ to *include* limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the

claimant's ability to work. *See Banks v. Berryhill*, 2018 WL 1631277, at *4 (C.D. Cal. Apr. 2, 2018); *Aranda v. Berryhill*, 2017 WL 3399999, at *6 (C.D. Cal. Aug. 8, 2017). Rather, as long as the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error." *Medlock v. Colvin*, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016).

Here, unlike in *Hutton*, the ALJ expressly considered all of the evidence related to Plaintiff's mental impairments at step four before concluding that those non-severe impairments did not necessitate inclusion of any limitation in the RFC. In particular, the ALJ discussed and evaluated the medical record, including Plaintiff's normal mental status examinations; limited clinical findings; Global Assessment of Functioning scores; the March 2014 psychiatric hospitalization; and the opinions of the consultative examining psychiatrist, the two State agency physicians, and Plaintiff's treating physician Dr. Michael Smith. (AR 25-28.)[1] After considering the medical evidence related to Plaintiff's non-severe mental impairments, the ALJ considered Plaintiff's daily activities and his testimony and demeanor during the hearing – all of which the ALJ found demonstrated that Plaintiff possessed good focus, memory recall, good concentration, persistence and pace, and good social interaction with not only his family, friends, and neighbors, but also during the hearing. (AR 29.) After thoroughly considering all of the evidence regarding Plaintiff's mental impairments, the ALJ concluded that they did not warrant inclusion of any mental limitations in the RFC. This did not constitute legal error. *See, e.g., McIntosh v. Berryhill*, 2018 WL 3218105, at *4 (C.D. Cal. June 29, 2018) (distinguishing *Hutton* where the ALJ expressly considered the claimant's non-severe mental impairment in formulating RFC, and concluding that because ALJ concluded that mental impairment caused no more than minimal restrictions, there

---

[1] The ALJ gave little weight to Dr. Smith's opinion regarding Plaintiff's mental limitations for several reasons (AR 28-29), a conclusion that Plaintiff does not contest.

11

was no requirement to include it in the claimant's RFC); *Medlock*, 2016 WL 6137399, at *5 (no legal error where, "[u]nlike the ALJ in *Hutton*, the ALJ in this case thoroughly considered the medical evidence related to Plaintiff's mild mental impairment at step four before choosing not to include the limitation in the RFC determination"); *Ball v. Colvin*, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) (same). It follows that the ALJ did not err by failing to include any mental limitations in his hypothetical questions to the VE or by relying on the VE's opinion in reaching his disability determination.

## ORDER

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 7/18/2018

*[signature]*

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE